**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**CHARLIE WILBORN**                                                                        **PLAINTIFF**

**V.**                                                        **CIVIL ACTION NO.: 2:07CV160-WAP-EMB**

**CORRECTIONS CORPORATION OF AMERICA,**                          **DEFENDANTS**
**"UNKNOWN" ADAMS & TALLAHATCHIE COUNTY**
**FACILITY MEDICAL DIRECTOR**


## REPORT AND RECOMMENDATION

A hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), was scheduled in this case for February 20, 2008, to determine if there exists a justiciable basis for plaintiff's claims filed pursuant to 42 U.S.C. §1983. Plaintiff Charlie Wilborn, who at the time of the hearing was no longer incarcerated and had been given notice of the hearing by mail at the address from which he had forwarded a motion to the Court, failed to appear for the hearing. Nonetheless, counsel for defendants, Will Thomas, appeared along with Ms. Gloria Johnson, a registered nurse employed by Defendant Corrections Corporation of America ("CCA").

An *in forma pauperis* complaint may be dismissed if it is determined that the allegation of poverty is untrue, or if the action or appeal is frivolous, malicious, fails to state a claim for which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2). In this case, the Complaint alleges that on August 3, 2007, plaintiff was confined at the Tallahatchie County Correctional Facility while awaiting medical treatment for depression and paranoid schizophrenia. The Complaint claims that all criminal charges against plaintiff had been dropped at the time. According to the Complaint,

plaintiff was held on suicide watch for ten days, while he waited for a bed to become available at Tri-Lakes Behavioral Hospital in Batesville, Mississippi. The Complaint alleges that instead of providing plaintiff with medication for his mental illness, prison officials placed him on suicide watch which included stripping him naked, placing him in a near freezing suicide cell and shutting off the water supply to his cell. Though the Complaint admits plaintiff was suffering from auditory and visual hallucinations at the time, it denies he ever said he wanted to kill himself or anyone else. The Complaint also alleges that while on suicide watch, plaintiff was given his hypertension medication on only four days; he was only allowed two showers; and he was given the same cold meal for breakfast, lunch and dinner each day. Ultimately, the Complaint alleges that plaintiff was placed on suicide watch because defendants didn't want to purchase his expensive psychotropic drugs.

Plaintiff's medical records were provided to the Court by CCA prior to the hearing. These records indicate that on August 4, 2007, plaintiff was given an initial health screening which included evaluation of his mental health. Nurse Johnson explained that plaintiff was evaluated by Dr. Gilbert MacVaugh, a clinical psychologist, and placed on suicide watch on August 4, 2007, because he admitted to having suicidal thoughts and had a history of suicidal ideation. Plaintiff's medical records show he was placed on a "finger food' diet, given a suicide blanket, and given medication for his hypertension. Progress Notes indicate that while on suicide watch, plaintiff was monitored at regular intervals. Nurse Johnson further explained that plaintiff's medical records indicate the prison physician found plaintiff's suicidal ideation had resolved by August 13, 2007, and he was taken off suicide watch and returned to general population.

In order for plaintiff to prevail on his Eighth Amendment claim for delay and denial of adequate medical care, he must allege facts which demonstrate "deliberate indifference to . . . [a] serious medical need[] . . . [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors in their response to the prisoner's needs or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). However, not every claim of inadequate or improper medical treatment is a violation of the Constitution, *Estelle*, 429 U.S. at  105; nor does a disagreement with a doctor over the method and result of medical treatment require a finding of deliberate indifference, *Spears v. McCotter*, 766 F.2d 179 (5th Cir.1985).  Merely alleging that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension.  *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir.1991); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993)("negligent medical care does not constitute a valid section 1983 claim.").  Further, medical records showing sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.  *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995).

In this case, plaintiff's medical records show that prison officials were not deliberately indifferent to a serious medical need.  To the contrary, plaintiff's medical records show that his mental health was immediately evaluated by a clinical psychologist who deemed it appropriate to place him on suicide watch.  And, during plaintiff's time on suicide watch, his health and comfort were constantly monitored.  Indeed, plaintiff's medical records indicate that prison medical staff immediately made attempts to determine what medications plaintiff was on after he

failed to provide this information. Accordingly, the Court finds that the Complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted. Therefore, it is my recommendation that plaintiff's lawsuit be dismissed as frivolous under 28 U.S.C. § 1915A(b). *See generally Thompson v. Patteson,* 985 F.2d 202 (5th Cir.1993).

The parties are referred to Local Rule 72.2(D) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained. The parties are warned that any such objections are required to be in writing and must be filed within ten days of this date. Failure to timely file written objections to the proposed findings, conclusions and recommendations contained in this report will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Respectfully submitted this, the 21st day of February, 2008.


**/s/   Eugene M. Bogen**
**UNITED STATES MAGISTRATE JUDGE**